IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
ASHEVILLE DIVISION
CIVIL CASE NO. 1:21-cv-00233-MR
CRIMINAL CASE NO. 1:19-cr-00060-MR-WCM-3

| | | |
|---|---|---|
| CHARLES MICHAEL LEDFORD, | ) | |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| vs. | ) | |
| | ) | |
| UNITED STATES OF AMERICA, | ) | **MEMORANDUM OF** |
| | ) | **DECISION AND ORDER** |
| Respondent. | ) | |
| | ) | |

**THIS MATTER** is before the Court on Petitioner's Motion under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence by a Person in Federal Custody. [Doc. 1].

## I. BACKGROUND

Petitioner was charged in a fourteen-count Superseding Bill of Indictment along with five co-Defendants in a methamphetamine trafficking conspiracy. In Count One of the Superseding Bill of Indictment, Petitioner was charged with a single count of conspiracy to possess with intent to distribute 50 grams or more of actual methamphetamine, in violation of 21 U.S.C. §§ 841(a)(1), 841(b)(1)(A), and 846. [1:19-cr-00060-MR-WCM ("CR") Doc. 63].

Petitioner signed a written Plea Agreement in which he admitted his guilt of Count One and acknowledged that: his maximum sentencing exposure of a minimum of 10 years' imprisonment and a maximum of life imprisonment;[1] the sentence had not yet been determined and an advisory guideline sentence would be calculated; the sentence, up to the statutory maximum, would be determined at the Court's sole discretion; and he would not be able to withdraw the plea as a result of the sentence imposed. [CR Doc. 106 at ¶¶ 4-6]. The parties agreed to jointly recommend that: the amount of actual methamphetamine known to or reasonably foreseeable to Petitioner was 3,890.86 grams and the amount of mixture or substance containing a detectable amount of methamphetamine known to or reasonably foreseeable to Petitioner was 159.9 grams [id. at ¶ 7(a)]; the base offense level would be increased by two levels because Petitioner maintained a premises for the purpose of distributing a controlled substance, including storing a controlled substance for the purpose of distribution pursuant to U.S.S.G. § 2D1.1(b)(12) [id. at ¶ 7(b)]; the plea was timely pursuant to U.S.S.G. § 3E1.1(a) [id. at ¶ 7(c)]; and the career offender or armed career criminal provision could be used in determining the sentence,

---

[1] The Plea Agreement notes that the minimum mandatory sentence may rise to 15 years or 25 years if warranted by Petitioner's prior convictions. [CR Doc. 106 at ¶ 4].

if applicable [id. at ¶ 7(d)]. The parties remained free to argue their respective positions regarding any other specific offense characteristics, cross-references, special instructions, reductions, enhancements, departures, and adjustments to the offense level and to seek a departure or variance from the applicable guideline range. [Id. at ¶¶ 7(e)-(f)]. The Plea Agreement further set forth the rights the Petitioner was waiving by pleading guilty including the right: to be tried by a jury; to be assisted by an attorney at trial; to confront and cross-examine witnesses; and not to be compelled to incriminate himself. [Id. at ¶ 14]. Petitioner expressly agreed to waive his appellate and post-conviction rights except for claims of ineffective assistance of counsel and prosecutorial misconduct. [Id. at ¶¶ 15-16].

A Rule 11 hearing was held before the Honorable W. Carleton Metcalf, United States Magistrate Judge, on October 9, 2019. [CR Doc. 218]. Petitioner stated, under oath, that he and counsel had reviewed the Superseding Indictment and the Plea Agreement together. [Id. at 7-8]. Judge Metcalf read aloud Count One of the Indictment and the statute to which Petitioner was pleading guilty, explained the elements of the offense, and advised Petitioner of his sentencing exposure of a minimum of 10 years' imprisonment and a maximum of life. [Id. at 8-11]. Petitioner stated that he understood the charge against him, including the maximum and minimum

3

penalties and the elements of the offense. [Id. at 12]. Petitioner agreed that counsel had discussed the sentencing guidelines with him and that he understood the Court could impose any sentence within the statutory limits and his sentence may be lower or higher than the guidelines range. [Id. at 12-14]. Petitioner stated that he understood that the plea would be binding even if the sentence was more severe than he expected. [Id. at 14]. Petitioner confirmed that by pleading guilty, he was waiving the right to plead not guilty, the right to have a speedy trial before a jury with the assistance of counsel, the right to summon witnesses to testify on his behalf, the right to confront witnesses against him, and the right to receive the presumption of innocence. [Id. at 15-16]. Petitioner further stated that he was in fact guilty of Count One; that his plea was freely and voluntarily entered with a full understanding of what he was doing; that he was not promised anything other than the promises contained in the Plea Agreement; and that he was not threatened to enter the plea agreement against his wishes. [Id. at 16, 26-27]. Petitioner acknowledged that he knowingly and willingly accepted the Plea Agreement's limitation on the right to appeal and file post-conviction proceedings. [Id. at 30]. Petitioner confirmed that he had ample time to discuss possible defenses with counsel and was entirely satisfied with counsel's services. [Id. at 31].

In support of Petitioner's guilty plea, the parties submitted a written Factual Basis that states in pertinent part:

> Between January and April of 2018, **a number of informants came forward and provided information on LEDFORD and/or BURCH to include information that they each attempted to obstruct or impede the administration of justice with respect to the investigation by threatening or intimidating co-conspirators who could be witnesses against them**. For example, on January 13, 2018, Investigator Thomas Heath Woodard from the CCSO-NC met with a CCSO-NC informant – referred to as CI#3. CI#3 reported, among other things, that LEDFORD's top customer in the Clay County, North Carolina area is BURCH. BURCH is also LEDFORD's right hand man and collects money owed to LEDFORD. LEDFORD meets with BURCH at BURCH's residence or elsewhere in Clay County. BURCH pays LEDFORD and then BURCH distributes meth to a variety of Clay County, North Carolina customers. BURCH collects their narcotics proceeds and then gives them to LEDFORD when LEDFORD makes his next trip up to Clay County, North Carolina. Sometimes, BURCH goes down to Georgia to pick up the meth. CI#3 also met with investigators in February, March, April and May of 2018, reporting, among other things that **LEDFORD told "SS" who LEDFORD suspected of being a confidential informant or thinking about being a confidential informant, that "No CI, no trial" and that that may not be a price she was willing to pay – referring to LEDFORD threatening SS if she is a confidential informant or thinking about becoming one.** BURCH told a group present afterwards that he puts the bodies of those who misbehave in the well behind his residence – referring to his participation in the threat as well.
> …
> On April 10, 2018, investigators from Georgia, including GBI ASAC Howard, and North Carolina, including members of the CCSO-NC, meth with a GBI informant in Union County, Georgia. GBI CI-88-993 told investigators, among other things, that he/she was at BURCH's North Carolina residence with SS one day when BURCH was on the phone with LEDFORD. SS

5

had just gotten out of the Towns County, Georgia jail. BURCH put LEDFORD on speaker phone and BURCH told SS "I don't know what they offered you during your stay at Towns County, but without a witness, there is no case," which was taken as a threat to SS.

…

[Ledford's] residence was equipped with a video surveillance system. The video feeds from the surveillance cameras were viewable on a monitor set up in the master bedroom of the residence. Investigators seized, among other things, a bag of meth from the master bedroom; bags containing meth residue; a container of meth in Melinda's purse; and **a loaded KBI .380 caliber semi-automatic pistol in a green ammo can in the shed attached to the residence**. Investigators found LEDFORD's stash in a hallway closet. More specifically, they found a hidden compartment in a closet. Inside the compartment, they found a cooler and a black and gray bag. Inside the cooler and bag, they found a total of approximately 5 pounds of meth; a vacuum sealed bag of $30,000 in U.S. currency; and four sets of digital scales….

…

Sgt. Tyler Hooks of Rockdale County Sheriff's Office in Georgia, **intercepted a letter LEDFORD sent to his wife, Melinda after his arrest while he was being detained in Georgia**. Sgt. Hooks notified GBI ASAC Howard on November 19, 2018 and provided him a copy of the intercepted letter. In the letter, **LEDFORD coaches his wife on her possible courtroom testimony. More specifically, in order for his confessions to be "thrown out" LEDFORD told her that they will need to show, falsely, that investigators threatened both of them with the Department of Family and Children Services and with the arrest of Melinda if LEDFORD did not talk – thereby presenting a false narrative in an attempt to have his confession suppressed**.

[CR Doc. 107: Factual Basis at 3, 6, 8] (emphasis added).

Petitioner stated at the Rule 11 hearing that he received a copy of the Factual Basis; that he read and understood it; that it was true and accurate;

6

and that if the matter had proceeded to trial, the Government would have been able to prove each of the statements in the Factual Basis beyond a reasonable doubt. [CR Doc. 218 at 26; see also CR Doc. 112: Certification].

The Presentence Investigation Report ("PSR") reiterated the offense conduct from the Factual Basis *verbatim*, including the paragraphs cited above. [CR Doc. 143: PSR at ¶¶ 25, 26, 38, 44]. The PSR calculated the base offense level as 36 because the offense was a violation of § 841 and Petitioner was accountable for 159.9 grams of a mixture or substance containing a detectable amount of methamphetamine and 3,890.86 grams of actual methamphetamine per U.S.S.G. § 2D1.1(a)(5). [Id. at ¶ 55]. Petitioner's offense level was increased a total of six additional levels for specific offense characteristics, including possessing a dangerous weapon, see U.S.S.G. § 2D1.1(b)(1); maintaining a premises for the purpose of distributing or manufacturing a controlled substance, see U.S.S.G. § 2D1.1(b)(12); and obstructing justice, see U.S.S.G. § 3C1.1. [Id. at ¶¶ 51, 56, 57, 60]. Three levels were deducted for acceptance of responsibility, resulting in a total offense level of 39. [Id. at ¶¶ 63-65]. Petitioner had five criminal history points and a criminal history category of III. [Id. at ¶¶ 73-74]. The resulting advisory guideline range was 324 to 405 months' imprisonment and at least five years of supervised release. [Id. at ¶¶ 100, 103].

7

Case 1:19-cr-00060-MR-WCM    Document 227    Filed 08/28/21    Page 7 of 18

The Court held a sentencing hearing on February 27, 2020. [CR Doc. 217]. Petitioner stated that he recalled the Rule 11 hearing; that he had answered the questions before Judge Metcalf truthfully; and that he would answer the questions the same if asked again. [Id. at 3-4]. Petitioner confirmed that he was pleading guilty because he is guilty, and that his plea was not the result of any threat, force, or promise other than the promises contained in the Plea Agreement. [Id. at 4-5]. Petitioner agreed that he had seen the PSR prior to sentencing, that he understood its contents, and that he had an adequate opportunity to review it with counsel. [Id. at 5-7]. Petitioner's counsel confirmed that he had an adequate opportunity to review the PSR with Petitioner. [Id. at 7].

Defense counsel conceded that the PSR correctly calculated the advisory guidelines range but argued for a sentence between 168 and 210 months' imprisonment due to Petitioner's low recidivism risk; his health condition, family, and work history; and the overall goals of the sentencing guidelines. [CR Doc. 217 at 9-11]. The Government requested a sentence within the advisory guidelines range for a number of reasons, including the damage caused by Petitioner's offenses in both North Carolina and Georgia, his attempts to obstruct justice, and his criminal history. [Id. at 12-17]. During the allocution, Petitioner apologized for his crimes and asked the

Court not to take the rest of his life away from him. [Id. at 17-18]. After considering the factors under 18 U.S.C. § 3553(a), the Court sentenced Petitioner at the bottom of the advisory guidelines range to a term of 324 months' imprisonment to be followed by five years of supervised release. [Doc. 217 at 18-19; CR Doc. 169].

On direct appeal, Petitioner argued that the Court erred by accepting enhancements that were not part of the plea agreement such that Petitioner was sentenced using a significantly higher guideline range, and that counsel was ineffective for failing to object to those enhancements. The Fourth Circuit Court of Appeals dismissed the appeal, on the grounds that the substantive claim was barred by the appellate waiver and the ineffective assistance claim was not cognizable on direct appeal because ineffectiveness did not conclusively appear on the face of the record. United States v. Ledford, 834 F. App'x 12 (4th Cir. 2021). The United States Supreme Court denied certiorari on May 17, 2021. Ledford v. United States, 2021 WL 1951996 (2021).

Petitioner filed the instant *pro se* Motion to Vacate pursuant to 28 U.S.C. § 2255 on August 21, 2021.[2] Petitioner raises a single claim of ineffective assistance of counsel as follows:

> My attorney failed to object to enhancements that were not contained within my Plea Agreement which caused me to receive a vastly different advisory guideline range. Without the enhancements my advisory guideline range would have been 210-262 months, instead of the range Judge Reidinger considered of 324-405 months. Plea Agreements are forms of contracts between the parties, higher scrutiny must be given to Plea Agreements because of the fundamental rights at stake.

[Doc. 1 at 4]. Petitioner asks the Court to "[r]emand, vacate, resentence without any enhancements." [Doc. 1 at 12].

The Court has concluded that no response from the United States is required, and now considers Petitioner's claim.

## II. SECTION 2255 STANDARD OF REVIEW

A federal prisoner claiming that his "sentence was imposed in violation of the Constitution or the laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack, may move the court which imposed the sentence to vacate, set aside or correct the sentence." 28 U.S.C. § 2255(a).

---

[2] See Houston v. Lack, 487 U.S. 266, 276 (1988) (establishing the prisoner mailbox rule); Rule 3(d), 28 U.S.C. foll. § 2255 (addressing inmate filings).

Rule 4(b) of the Rules Governing Section 2255 Proceedings provides that courts are to promptly examine motions to vacate, along with "any attached exhibits and the record of prior proceedings …" in order to determine whether the petitioner is entitled to any relief on the claims set forth therein. After examining the record in this matter, the Court finds that the arguments presented by Petitioner can be resolved without an evidentiary hearing based on the record and governing case law. See Raines v. United States, 423 F.2d 526, 529 (4th Cir. 1970).

### III. DISCUSSION

Petitioner contends that counsel provided ineffective assistance because he "failed to object to [sentencing] enhancements that were not contained within [his] plea agreement." [Doc. 1 at 4].

The Sixth Amendment to the U.S. Constitution guarantees that in all criminal prosecutions, the accused has the right to the assistance of counsel for his defense. See U.S. Const. Amend. VI. To show ineffective assistance of counsel, a petitioner must first establish deficient performance by counsel and, second, that the deficient performance prejudiced him. See Strickland v. Washington, 466 U.S. 668, 687-88 (1984). The deficiency prong turns on whether "counsel's representation fell below an objective standard of reasonableness ... under prevailing professional norms." Id. at 688. A

reviewing court "must apply a 'strong presumption' that counsel's representation was within the 'wide range' of reasonable professional assistance." Harrington v. Richter, 562 U.S. 86, 104 (2011) (quoting Strickland, 466 U.S. at 689). The prejudice prong inquires into whether counsel's deficiency affected the judgment. See Strickland, 466 U.S. at 691. A petitioner must demonstrate "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." Id. at 694. The petitioner "bears the burden of affirmatively proving prejudice." Bowie v. Branker, 512 F.3d 112, 120 (4th Cir. 2008). If the petitioner fails to meet this burden, a reviewing court need not even consider the performance prong. Strickland, 466 U.S. at 670. When applying the Strickland prejudice test in the context of sentencing, "any amount of actual jail time has Sixth Amendment significance." Glover v. United States, 531 U.S. 198, 203 (4th Cir. 2001).

As a preliminary matter, Petitioner's conclusory allegation that counsel was ineffective for failing to "object to enhancements" is too vague to support relief. See generally United States v. Dyess, 730 F.3d 354 (4th Cir. 2013) (vague and conclusory allegations contained in a § 2255 petition may be disposed of without further investigation by the district court).

12

Construing the *pro se* Motion to Vacate liberally, Petitioner appears to contend that counsel should have objected to the two-level increases to his offense level for possession of a dangerous weapon (including a firearm) pursuant to U.S.S.G. § 2D1.1(b)(1) and for obstruction of justice pursuant to U.S.S.G. § 3C1.1. [CR Doc. 143 at ¶¶ 56, 60].

Section 2D1.1(b)(1) calls for a two-level increase "[i]f a dangerous weapon (including a firearm) was possessed…." U.S.S.G. § 2D1.1(b)(1) (2018). This enhancement "should be applied if the weapon was present, unless it is clearly improbable that the weapon was connected with the offense," for instance, "if the defendant, arrested at the defendant's residence, had an unloaded hunting rifle in the closet." U.S.S.G. § 2D1.1, app. note 11(A). For this enhancement to apply, the Government must prove by a preponderance of the evidence that "the weapon was possessed in connection with drug activity that was part of the same course of conduct or common scheme as the offense of conviction." United States v. McAllister, 272 F.3d 228, 233-34 (4th Cir. 2001). Proof of constructive possession is sufficient, and the Government is entitled to rely on circumstantial evidence to carry its burden. United States v. Manigan, 592 F.3d 621, 629 (4th Cir. 2010). In assessing whether a defendant possessed a firearm in connection with relevant drug activity, a sentencing court may consider a number of

13

factors, including the type of firearm involved and the location or proximity of the seized firearm. Id.

Here, the Factual Basis, which Petitioner admitted is true and correct, provides that Petitioner's residence was equipped with a video surveillance system with feeds viewable in the master bedroom; that investigators seized a loaded semi-automatic firearm in a shed attached to Petitioner's residence; and that they found more than two kilograms of methamphetamine, $30,000 in cash, and other evidence of drug trafficking in the home. [CR Doc. 107 at 6]. The foregoing is circumstantial evidence that Petitioner possessed the subject firearm in connection with drug activity. Petitioner has failed to present any argument that the connection between the firearm and the drug conspiracy was "clearly improbable" or that the weapon was unconnected to the offense. See United States v. Mabry, 576 F. App'x 155 (4th Cir. 2014); United States v. Buensalida, 537 F. App'x 226 (4th Cir. 2013). Accordingly, the two-level enhancement for possession of a firearm was properly applied, and counsel was not ineffective in failing to object to this enhancement.

Section 3C1.1 applies if: "(1) the defendant willfully obstructed or impeded, or attempted to obstruct or impeded, the administration of justice with respect to the investigation, prosecution, or sentencing of the instant offense of conviction and (2) the obstructive conduct related to (A) the

14

defendant's offense of conviction and any relevant conduct; or (B) a closely related offense…." U.S.S.G. § 3C1.1 (2018). Obstructive conduct that occurs prior to the start of the investigation of the offense may be covered by this guideline "if the conduct was purposefully calculated, and likely, to thwart the investigation or prosecution of the offense of conviction." U.S.S.G. § 3C1.1, app. note 1. Examples of covered conduct include: "threatening, intimidating, or otherwise unlawfully influencing a co-defendant, witness, or juror, directly or indirectly, or attempting to do so…." U.S.S.G. § 3C1.1, app. note 4(A).

Here, the Factual Basis provides that in an attempt to have his confession suppressed, Petitioner sent a letter to his wife from jail, asking her to falsely claim that she and Petitioner were threatened by investigators. [CR Doc. 107 at 8]. This is evidence of Petitioner's attempt to thwart his own prosecution and to influence his wife to lie to investigators or in court. See United States v. McKoy, 844 F. App'x 637 (4th Cir. 2021). The Factual Basis also indicates that Petitioner threatened an individual whom he believed had cooperated with law enforcement (or at least had considered doing so). [CR Doc. 107 at 3]. This further lends support to his efforts to thwart the investigation and prosecution of his offense. See United States v. Wilson, 832 F. App'x 147 (4th Cir. 2020). Both of these incidents would have
15

independently warranted the obstruction of justice enhancement, and Petitioner has failed to explain why it should not have been applied.

In sum, the Court concludes that defense counsel was not deficient for failing to object to these enhancements. The enhancements are supported by the Factual Basis, and Petitioner admitted, under oath, that the Factual Basis is true and correct. Further, there is no reasonable probability that these objections would have succeeded had counsel raised them, as the Factual Basis supports them by a preponderance of the evidence. Rodriguez v. Bush, 842 F.3d 343, 346 (4th Cir. 2016) (holding that a defendant is not prejudiced by counsel's failure to make a meritless objection).

To the extent that the Petitioner suggests that counsel should have objected to these enhancements because they were not included in the Plea Agreement, this argument is rejected. The Plea Agreement includes several joint recommendations by the parties, including the drug amount attributable to Petitioner and an offense level increase for maintaining a premises for the purpose of distributing a controlled substance. [CR Doc. 106 at ¶ 7]. However, these recommendations were not binding on the Court and nothing precluded the Court from concluding that additional specific offense characteristics and enhancements apply. [See id. at ¶¶ 6, 7(e)]. Counsel

16

cannot be deemed deficient for failing to raise this frivolous objection, and there is no reasonable probability that it would have succeeded had counsel raised it. See Rodriguez, 842 F.3d at 346.[3]

## IV. CONCLUSION

For the foregoing reasons, Petitioner's § 2255 Motion to Vacate is denied.

Pursuant to Rule 11(a) of the Rules Governing Section 2254 and Section 2255 Cases, this Court declines to issue a certificate of appealability. See 28 U.S.C. § 2253(c)(2); Miller-El v. Cockrell, 537 U.S. 322, 338 (2003) (in order to satisfy § 2253(c), a petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong); Slack v. McDaniel, 529 U.S. 473, 484 (2000) (when relief is denied on procedural grounds, a petitioner must establish both that the dispositive procedural ruling is debatable and that the petition states a debatable claim of the denial of a constitutional right).

---

[3] Petitioner does not appear to argue that the weapon and obstruction of justice enhancements rendered his guilty plea involuntary, as he is only seeking the vacatur and modification of his sentence. [See Doc. 1 at 11]. Even if he were to raise such a claim, however, it would be rejected, as any such claim is conclusively refuted by his own sworn statements at the Rule 11 hearing regarding the accuracy of the Factual Basis, his understanding of the PSR, and the voluntariness of his guilty plea.

**ORDER**

**IT IS, THEREFORE, ORDERED** that Petitioner's Motion to Vacate under 28 U.S.C. § 2255 [Doc. 1] is **DENIED** and **DISMISSED**.

**IT IS FURTHER ORDERED** that the Court declines to issue a certificate of appealability.

**IT IS SO ORDERED.**

Signed: August 27, 2021

Martin Reidinger
Chief United States District Judge